ISABELLA A. ADAMS v. J. L. POWER.

1. NOVATION.—In the civil law there are three kinds of novation: 1. Where the debtor and creditor remain the same, but a new debt takes the place of the old one; 2. Where the debt remains the same, but a new debtor is substituted; and, 3. Where the debt and debtor remain, but a new creditor is substituted.

2. SAME—DELEGATION.—Delegation is where a debtor obtains a release from his creditor by the substitution and acceptance of another who obliges himself to the creditor. Domat, 910, sec. 2318, 2319.

3. SAME AT COMMON LAW.—Novation at common law is mainly the same as in the civil law.   3 T. R. 180.

4. CONSIDERATION.—There must always be an old debt extinguished, as a consideration for the new one.

5. SAME—DOCTRINE ILLUSTRATED BY THE CASE AT BAR.—P. was indebted to S., who was indebted to C. & C.   S. took P.'s note for the amount, having it made payable to C. & C., stating to P. at the time that he desired to hand it to them in settlement of his own debt to them.   *Held,* that when the note was accordingly accepted by C. & C. the several transactions operated upon the principle of novation, as an extinguishment of P.'s debt to S., and of S.'s debt to C. & C. by the substitution of the debt created by the note from P. to C. & C.   *Held,* further, that the new debt from P. to C. & C. was not at all affected by a cotemporaneous collateral covenant between S. & P., and to which C. & C. had not assented; but *aliter* if they had assented.—TARBELL, J., dissenting.

5. INSTRUCTIONS TO JURY.—An instruction containing only a correct legal proposition held to be erroneous, because inapplicable to the facts.

6. EVIDENCE—PRESUMPTION—CONTRACTS.—Where the consideration passes from A. to B., and A. takes B.'s note, payable to C., the transaction must be held to amount to a consent by B. that A. shall deliver it to C.; and if B. is further informed that A.'s motive for taking the note, payable to C., is the extinguishment of a debt owing by A. to C., these facts establish a *prima facie* consideration for the note.   And the inference is greatly strengthened if C., shortly after receiving the note, transfers it by indorsement to a third party.   But if the *onus* of proof be upon C., the inference thus created is subject to explanation.

7. SAME.—When P. signed the note payable to C. & C., with notice that S. intended handing it to them in payment of his debt to them, he was estopped *in pais* from setting up any transactions between S. and himself as a defense against it.   TARBELL, J., dissenting.

ERROR to the circuit court of Hinds county, 1st district.   BROWN, J.

The opinions of the court contain a full statement of the case.

*Johnston & Johnston,* for plaintiff in error.

*Harris & Withers,* for defendant in error.

No briefs on file.

PEYTON, C. J.:

Isabella A. Adams instituted an action of *assumpsit* in the circuit court of Hinds county, against J. L. Power, on a promissory note for $3,750, made by the

said J. L. Power and B. F. Jones, on the 11th day of February, 1867, payable to Asa R. Carter and John H. Cook, on the 1st day of January, 1869, and by them transferred by indorsement to the plaintiff, without recourse to them as indorsers thereof, on the 24th day of April, 1867.

To this action the defendant pleaded the general issue, and a special plea in bar, setting up a contemporaneous agreement in writing, under seal, executed by Jas. J. Shannon, and the said B. F. Jones and J. L. Power, by which the said Shannon covenants as agent for said Carter and Cook, to canvass and act as agent for the "Clarion" newspaper, conducted by said Power and Jones, and use his best efforts to procure advertisements and subscriptions for said paper, and agrees, on behalf of said Carter and Cook, to procure subscriptions and advertisements, unless prevented by death or sickness, to pay the note sued on and to collect the bills for advertisements and subscriptions thus procured, and pay the debt. And the said Power and Jones covenant to supply the subscribers to and publish the advertisements in said newspaper, that may be procured by the said Shannon as aforesaid. And the plea avers that the defendant has always been ready and willing, and offered to perform his part of the agreement, but that the said Shannon, although not prevented by either of the casualties mentioned in the agreement, has wholly failed to perform the covenants made by him as aforesaid, as agent and attorney for said Carter and Cook, nor have they performed their part of said agreement, and concludes with a verification.

To this special plea the plaintiff demurred, and the demurrer was overruled by the court. And upon a replication in short by consent to this plea, traversing the same, the cause was submitted to a jury, who found a verdict for the defendant. And thereupon the

plaintiff made her motion to set aside the verdict, and for a new trial, on the following grounds:

1. The jury found contrary to law.

2. The jury found contrary to the evidence.

3. The court erred in giving the instructions asked by the defendant.

4. The court erred in refusing the instructions asked by the plaintiff.

5. The court erred in admitting in evidence the written contract as to advertising, made between J. J. Shannon and defendant.

The motion was overruled by the court, and judgment rendered on the verdict, from which the plaintiff brings the case here for the revision of this court, and makes the following assignments of error:

1. The court below erred in overruling the plaintiff's demurrer to the special plea of defendant.

2. The court below erred in overruling the plaintiff's motion for a new trial.

3. The court below erred in admitting as evidence in this case, the written agreement relative to procuring subscriptions and advertisements for the daily "Clarion" newspaper, made between J. J. Shannon and Power and Jones.

4. The court below erred in refusing the second instruction asked by the plaintiff.

5. The court erred in refusing the fourth instruction asked by the plaintiff.

6. The court below erred in refusing the fifth instruction asked by the plaintiff.

7. The court below erred in refusing the sixth instruction asked by the plaintiff.

8. The court below erred in giving the instructions asked by the defendant.

In the determination of this case, we deem it necessary to consider only the second and third assignments of

error, as the disposition of these will be decisive of all the questions presented by this record for adjudication.

This case, although new in the instance here, is yet believed to be governed by well settled principles of law, as laid down by elementary writers upon contracts when treating of the doctrine of novation.

In the civil law there are three kinds of novation. 1. Where the debtor and creditor remain the same, but a new debt takes the place of the old one. 2. Where the debt remains the same, but a new debtor is substituted for the old one. This transaction is called delegation. Domat lays down the essential distinction between delegation and any other novation, thus: that the former demands the consent of all three parties, but the latter that only of the two parties to the new debt. 3. Where the debt remains the same, but a new creditor is substituted for the old one. This is also called delegation, for the reason above given, to wit: that all three parties must assent to the new bargain.

Delegation is the change of one debtor for nother, when he who is indebted substitutes a third person who obligates himself in his stead to the creditor; so that the first debtor is acquitted and his obligation extinguished, and the creditor contents himself with the obligation of the second debtor. 1 Domat, 919, § 2318. And in section 2319 the same author says: " Delegation is not made but by the consent both of the debtor who delegates another in his place of the person who is delegated, and of the creditor who accepts the delegation, and who contents himself with the new debtor."

The common law doctrine of novation mainly agrees with that of the civil law, but in some parts differs from it. Tallock v. Harris, 3 T. R. 180, is a leading case of novation at the common law. In that case, it was ruled that, " if A. owes B. £100, and B. owes C. £100, and the three meet and it is agreed between them that A. shall

pay to C. £100, B.'s debt is extinguished, and C. may recover that sum against A."

There must always be a debt once existing, and now canceled, to serve as a consideration for the new liability. The action in all cases is brought on the new agreement. But in order to give the right of action, there must be an extinguishment of the original debt. 4 B. & C. 163; 1 Mees. & W. 124; 14 Ill. 34; 4 La. Ann. 281; 15 N. H. 129. A good novation is an accord executed. 5 Barn. & Ad. 925; 3 Nott & McCord, 171; 24 Conn. 621.

In that kind of novation, called in the civil law delegation, no new creditor could be substituted without the debtor's consent. This rule is observed in the common law. Hence, without this consent and promise to pay, a new creditor can have no action against the debtor, because there is no privity of contract between them. To establish such privity, there must be a new promise founded on sufficient consideration. And the extinction of the prior debt is a sufficient consideration in such case. 14 East, 582; 5 Wheat. 277; 12 Ga. 406; 7 Harris & Johns. 213, 219; 21 Me. 484.

When assent or consideration is wanting, the novation operates only as a species of collateral security. This assent on the part of the debtor is said to be essential, for the reason that he may have an account with his assignor; and he shall not be barred of his right to a set-off, or any defense he may have. Still, if anything like an assent on his part can be inferred, he will be considered as the debtor. 4 Esp. 203; 6 Tex. 163.

It is laid down by Parsons on Contracts, as a principle deducible from the cases upon this subject, that if A. owes B., and B. owes C., and it is agreed by these three parties that A. shall pay this debt to C., and A. is by this agreement discharged from his debt to B., and B. is also discharged from his debt to C., then there is an

obligation created from A. to C., and C. may bring an action against A. in his own name. This would be no contradiction or exception to the ancient rule, that a personal contract cannot be assigned so as to give the assignee a right of action in his own name. It is the case of a new contract formed and a former contract dissolved; and the general principles in relation to consideration attach to the whole transaction. Thus, to give the transaction its full legal efficacy, the original liabilities must be extinguished; for, if the debt from A. to B. be not discharged by A.'s promise to pay it to C., then there is no consideration for this promise, and no action can be maintained upon it; but, if this liability be discharged, then it is a sufficient consideration, and if, at the same time, C. gives up his claim on B., as the ground on which B. orders A. to pay C., then the consideration for which A. promises to pay C. may be considered as moving from C. 1 Pars. on Cont. 218–220.

An important rule of novation is, that the extinction of the debt destroys also all rights and liens appertaining thereto. Hence, if any hypothecations be attached to the old contract, they will be canceled by the new one, unless express words retain them. The second contract is simple and independent, and upon its terms the action is brought. Hence, too, the new parties cannot avail themselves of defenses, claims and set-offs which would have prevailed between the old parties. 2 Bouv. L. D. 242. This necessarily results from the extinguishment of the old liabilities and the creation of the new relation of debtor and creditor.

Let us now apply these principles to the case under consideration, and thereby ascertain whether the defense set up by the defendant in this action can avail him; and, for this purpose, we must recur to the facts of the case, and the evidence in support of the defense and that in support of the action, as they appear in the record.

The promissory note in suit, and read in evidence in this case, is as follows:

"$3,750.          JACKSON, Miss., February 11th, 1867.

On the first day of January, 1869, we promise to pay Asa R. Carter and John H. Cook, the sum of thirty-seven hundred and fifty dollars, to bear interest from date at eight per cent per annum, until paid, for value received.                         J. L. POWER,
                                        B. F. JONES."

The defendant, Power, testified that this note was given for the purchase by him and the said B. F. Jones, from J. J. Shannon of one-quarter interest in the "Clarion" newspaper establishment. He further testified that the note was made payable to Carter and Cook at the request of the said Shannon, who said he was indebted to them and wanted the note made payable to them, that he might hand them the note. That neither said Carter or Cook, or plaintiff was present at the time, and that witness had no knowledge that either of those persons ever assented to the written argument in reference to *me* advertising and subscriptions, or that they knew of the existence of such contract.

This testimony of defendant, Power, is corroborated by that of the plaintiff, Mrs. Adams, who testified that as administratrix of the estate of her late husband, S. R. Adams, deceased, she sold the "Clarion" office, then located in Paulding, and formerly conducted by her said husband, to J. J. Shannon, and that Carter and Cook, the payees of the note sued on, were Shannon's sureties for such purchase, and that she received the note sued on from Carter and Cook in payment of such indebtedness; that she knew nothing at all of any contract that the note sued on was to be paid by advertisements; that she never heard anything of that matter until this litigation was commenced; that she took the note as assignee for value and in good faith.

This evidence shows a transaction in which Power was indebted to Shannon, and Shannon was indebted to Carter and Cook ; and Power, at the request of Shannon, executed his note for the debt to Shannon, to Carter and Cook, which, when received by them and indorsed to the plaintiff without recourse to them in payment of a debt, was a discharge of Power's liability to Shannon, and of Shannon's liability to Carter and Cook, whose assent to this transaction is established by their taking Power's note and passing it off for valuable consideration without recourse. Power knew at the time that he gave the note that it was intended to pay a debt of Shannon to Carter and Cook, because Shannon told him so, and as the evidence shows that Carter and Cook were not present when the agreement was made to pay the note in advertisements and in subscriptions to the "Clarion" newspaper, and that the plaintiff knew nothing of that agreement until the commencement of this suit, it is very clear that neither of these parties could be affected by it.

The giving of the note by Power to Carter and Cook, and their acceptance of the same, had the effect in law of paying two debts, to wit : the debt of Power to Shannon, and the debt of Shannon to Carter and Cook, and created a new liability of debtor and creditor between Power and Carter and Cook, which could not in any way be affected by any collateral agreement between Power and Shannon, and of which Carter and Cook had no knowledge, and which was made by Shannon without their authority, although he may have assumed to act as their agent and attorney, and have so stated himself to be in the agreement. There is no evidence in the record to show that Shannon had any authority from Carter and Cook to enter into the agreement on their behalf, which is relied on as a defense to this action, and without such authority the agreement would not bind them. But, upon reference to the deed con-

taining the terms and covenants of the agreement, it
will be seen that it was signed and sealed by Jas. J.
Shannon in his individual capacity, and not as agent
or attorney for any person, and he alone is bound by
the covenants entered into by him.

In no aspect in which this case can be viewed was
the agreement legal evidence as between the parties to
this suit, and therefore the court erred in allowing it to
be read as evidence upon the trial of the cause.

This agreement was a collateral contract between
Shannon and Power, and could not affect those who
were not parties to it.  For it is laid down by high
authority, and is sustained by reason, that a contem-
poraneous collateral contract must be between the
parties to the note, and no others, in order to be avail-
able, since it is only to avoid circuity of action that
such a covenant is pleadable at law.  Hence, such a
contract between the defendant and Shannon, that this
or that condition shall be ingrafted on the note, is no
defense to the note.  The agreement, though contem-
poraneous, is yet collateral and independent, for it can-
not be averred to be parcel of the contract in suit,
because, in order to be parcel, it ought to be between
the same parties.  If the parties to the note and to the
agreement are not the same, cross actions must be
resorted to, and not pleas in bar.  2 Parsons on Notes
and Bills, 536.  If Power has sustained damage by the
failure of Shannon to perform his covenants with him,
his remedy is in an action against Shannon on the
agreement for the non-performance of the covenants
therein contained.  There is no evidence in the record
to show, or even tending to show, that Shannon had any
authority from Carter and Cook to make the agreement
on their behalf, or to use their names in any way in con-
nection therewith; but, on the contrary, the evidence
abundantly shows that neither of them was present
when the same was entered into by Shannon, and could

not at that time have had any knowledge of it. It is very apparent, from the whole transaction and testimony in the cause, that Shannon assumed to bind Carter and Cook in an agreement with Power, made in their absence and without authority from them, and, therefore, they were in no way bound by it. For the reasons last above stated, we are of opinion that said agreement was improperly admitted in evidence.

This brings us to the second assignment of error, which comprehends within its scope all the subsequent assignments of error, which impeach the propriety of the action of the court below in giving and refusing instructions upon the trial of the cause.

The court below very properly gave to the jury the 7th instruction asked by the plaintiff, which is as follows: "Unless defendant, by his proof, connected Carter and Cook with knowledge of the advertising contract, and a sanction of the same, plaintiff is not bound thereby;" but refused to give the second instruction asked by the plaintiff, which is as follows: "If the jury believe, from the evidence, that Carter and Cook, the payees of the note sued on, gave no agency to J. J. Shannon to make the collateral contract as to advertising; that they knew nothing of any such defeasance to the payment of the said note up to the time of indorsing the same to the plaintiff; that plaintiff herself knew nothing of such contract in reference to advertising; and that Powers and Jones made the note payable to Carter and Cook absolutely, and knowing that said note was to be delivered to said Carter and Cook as payees, and that the consideration of said note was for one-fourth interest in the "Clarion" office, which the makers of the note have realized and enjoyed without any failure of such consideration, then the law is for plaintiff, and the jury should find for her." It is difficult to conceive upon what ground this instruction was refused. It certainly propounded the law correctly

as applicable to the facts of the case, developed by the testimony in the cause, and should have been given, and the refusal to do so by the court was well calculated to mislead the jury, and, being inconsistent with the 7th instruction, it left the jury without any legal guide to direct them in the finding of their verdict.

The fourth instruction asked by the plaintiff is the following: "If the jury believe from the evidence that the defendant made the note sued on payable to Carter and Cook, and relied alone upon Shannon as to the advertising contract, without any agreement in reference thereto with Carter and Cook, or the plaintiff, then the jury should find for the plaintiff the amount of the note sued, and interest at the rate specified in said note." And the fifth instruction asked by the plaintiff is in the following language: "If the jury believe from the evidence that there has been no failure of consideration in the case, and no payments made, and no set-off or discount established, they should find for the plaintiff." These instructions are believed to be correct legal propositions, and should have been given to the jury, and the refusal of the court to give them to the jury is error.

In the views already expressed of this case, it will be perceived that we have anticipated and answered all the instructions given for the defendant, except the second, which is couched in the following terms: "The note sued on in this cause being negotiable only by virtue of our statute, the makers are entitled to the same defenses against the holder by written assignment, which they would have against the payee, and this whether the holder had notice of such defenses or not." Under the provisions of our statute, this instruction undoubtedly announces a correct legal proposition, but its vice consists in its inapplicability to the facts of the case. We have already shown that Carter and Cook were not bound by the collateral contempora-

neous agreement entered into by Shannon and Power, and therefore it constitutes no defense as between the maker and payees of the note, and, consequently, it is no defense in this action. It is conceded that if the agreement would have been a good defense to an action on the note, brought by the payees against the maker, it would be equally so in the action brought by the plaintiff, who, as assignee, took the note subject to all defenses, to which the defendant is entitled under the statute, growing out of the want of lawful consideration, failure of consideration, payments, discounts and set-offs, made, had or possessed against the same, previous to notice of assignment, in the same manner as though the suit had been brought by the payee. This instruction was an abstract proposition of law, inapplicable to the facts of the case, and therefore should not have been given to the jury.

If this defense prevailed, the result of the transaction would be, that Shannon would have his debts extinguished, and Power would get his interest in the " Clarion" printing establishment for nothing, and Mrs. Adams, the *bona fide* holder of Power's note would be wholly without remedy, in consequence of Shannon's failure to perform his collateral engagement with Power, because she took the note in discharge of Carter and Cook's liability, and in payment of Shannon's note given for the " Clarion," and therefore she can have no recourse upon these parties or either of them. Such results cannot rightfully and properly be worked out through the medium of the law.

For the reasons herein stated, the judgment must be reversed, and the cause remanded for a new trial.

Defendant in error applied for a re-argument of the cause.

*Johnston & Johnston,* for the application.

*Harris & George, contra.*

SIMRALL, J.:

The argument in support of the application for a re-hearing does not controvert the principles of law laid down in the opinion; but attempts to show that they do not apply in this case. The theory of the defense in the circuit court was, that the note and agreement were contemporaneous, and together constituted the contract; that, as Shannon assumed to act as the agent of Carter and Cook in making the agreement, and as they received the note from him, they could not deny his authority. The special plea, setting up the agreement and the non-performance of the stipulations in regard to subscriptions and advertisements, states that it was made by Shannon, as the agent of Carter and Cook. When objected to as evidence on the trial, because there was no evidence of an authorization by Carter and Cook, it was said, as recited in the bill of exceptions, that such evidence would be supplied in the further progress of the trial. There was no evidence on the point before the jury, unless the acceptance of the note by Carter and Cook so connected them and their title to the paper with the transaction between Shannon and Power and Jones, as that they were necessarily bound thereby. The counsel for defendants in error, in their brief, likened it to a bond with the agreement written under it as conditions; the same, in effect, as if the separate contract were written under the note, changing its absolute quality by the stipulations as to the mode of payment, and in that condition had been delivered to Carter and Cook. If the payees had accepted the paper in that shape, it unquestionably should have had no other legal import than if the note had been payable to Shannon, and the suit were brought by him.

The oral argument was directed mainly to the proposition that Carter and Cook derived title to the paper

through Shannon, as if Shannon had been payee, and had indorsed to them. Therefore they were substituted, and their assignee, Mrs. Adams, by virtue of the statute, to Shannon's rights and no more, and defenses as against him could be set up against Carter and Cook or their indorsee. Or, to state the idea in the view presented in the argument on this application, the note was, in the sense of the civil law, an " indication," resting altogether upon the considerations and inducements between Shannon, Power and Jones; Carter and Cook being merely the appointees of Shannon to receive payment. If the making them payees was merely for the purpose to "indicate" them as the persons to receive the money, then very clearly they are bound by Shannon's contract. In such a transaction it does not appear that any new motive or consideration arises affecting Carter and Cook.

Where the consideration passes between A. and B., but A. takes B.'s note payable to C., the suggestion is very natural (as this is out of the usual course of business), why is C. selected as payee, since he has no connection with the consideration and bargain out of which the note originated? The inqury is at once stated, what are the relations between A. and C. that induces the former to make the latter the recipient of the money that is due to himself from B.? If B. consents to make his promise to pay C., and delivers the note to A., he must be taken as conclusively consenting that A. may deliver the note to C. for his use and benefit. If he is further informed that the motive for making the note payable to C. is that A. is indebted to C., and by reason of that indebtedness he proposes to deliver the paper to him, and the delivery is accordingly made, a *prima facie* case is made out of the consideration upon which C. takes the paper. But the objection is stated, that from this it would not appear whether C. took the note in discharge of his debt to A. or as collateral

security therefor; that would be open to explanation, if the *onus* were upon C. to show how he took it. If C., very shortly after he got the note, transferred it by indorsement, without recourse to a third party, it greatly strengthens the inference that he took absolutely and not by way of pledge, or indemnity — for it is not presumed that he violated the trust upon which he held the paper. His conduct explains the doubt whether, in the first instance, he took the note absolutely, or in trust to collect it, and apply to A.'s debt to himself.

We think that there is testimony tending to show that this hypothetical case was the real transaction between Shannon, Power and Jones. Power, in his testimony, said: "Neither Carter or Cook were present at the time" (when the note and agreement were made), "had no knowledge that they ever assented to the written agreement," or knew of the existence of such contract; "that Shannon said that he was indebted to Carter and Cook, and wanted the note made payable to them that he might hand them the note." When Power and Jones made the note, as desired by Shannon, and put it in his hands, they said to him, in legal effect, "deliver the note to the payees, because of your indebtedness to them," and intrusted him with power to deliver, upon such terms, as respected that indebtedness, as he pleased. They, by making the note absolute for the payment of money, intrusted Shannon with authority to pay his debt with it, if he chose to do so. If Shannon passed the note to Carter and Cook without notifying them of the collateral agreement, he acted in bad faith to Power and Jones, but disconnected Carter and Cook altogether from the contract and bargain, out of which the note originated. When they saw the note payable to themselves offered to them by Shannon for his debt to them, Carter and Cook had a right to believe that Power and Jones had consented to pay to them Shannon's debt. And if, further, they accepted the note in discharge of

Shannon's indebtedness, the consideration, moving them to accept, and upon which the promise was made, was the extinguishment of Shannon's debt to them. The execution of a note in that form was the equivalent of a declaration made by Power and Jones to Carter and Cook, "if you will take this note in satisfaction of Shannon's debt to yourselves, we will become paymasters to you in Shannon's stead." If the payees act upon that condition of things and do take the note, as between themselves and the promissors, the consideration is the extinguishment of Shannon's debt, and not the transactions between Shannon, Power and Jones. Nor need the payees inquire into the bargain between Shannon and the promisors. When Power and Jones signed this note, with notice that it would be handed to the payees to take up their creditor's debt to them, the defendant would be estopped *in pais* from setting up defenses arising out of the transaction between Shannon and himself. If A..signs a note as surety for B., blank as to the amount, for the purpose of borrowing $1,000 from a bank, and B. in fraud and violation of his agreement, fills the blank with $5,000, and sells the paper, A. will not be heard, to set up the agreement with B. to defeat a recovery, because he has reposed confidence in B., and has impliedly authorized him to fill the blank as he pleases. Where a loss must fall upon two innocent persons, it ought to come upon him who has held another out as worthy of trust and confidence, when by means of bad faith the act of the third party has induced the loss. If one person proposes to buy a note from the holder, and before the purchase, inquires of the maker if he will pay the note, or if there be defenses, and he answers the note is good and he will pay, he is estopped from pleading offsets, discounts, or defenses which would defeat a recovery, however true in fact; to permit him to do so would put it in his power to work a wrong and injustice

to one who, on the faith of his declaration, has parted with money. Power and Jones put it in the power of Shannon to substitute their note in payment of his debt; if his creditors, seeing the note payable to themselves, having had no business or trade with the promisors, accept the note, it would be a hardship and injustice to them, to permit the makers to go back to the trade between their debtor and themselves, and defeat a recovery for reasons connected with that bargain. The makers of the note put it in the power of their creditor to make, and assented to this use of, the note, and they ought to be bound by it.

Was there testimony to the jury tending to the conclusion that the payees took it in payment of an indebtedness of Shannon to them ? These facts were in evidence : First, that Shannon informed Power that he was indebted to Carter and Cook; second, that the note was made payable to them for that reason ; third, they did secure the note ; and fourth, the disposition which they very shortly afterwards made of it, tends to show that they received it absolutely, for they transferred it without recourse to Mrs. Adams, which they would not have had a right to do if they held upon trust as collateral for the debt. From these facts the jury might have inferred that the payees received the note in discharge of Shannon's debt to them. If so, then the case comes within the range of the principles declared in the opinion. For, if Carter and Cook are not affected by the defenses set up, neither is Mrs. Adams who claims title through them.

The authorities concur that all the parties must agree to the contract. Power and Jones must assent to become paymaster to Carter and Cook, and they must accept them as such in the place of Shannon. We do not suppose that all these parties must have been present, consenting at the same time to the arrangement.

When the note was given, and Power and Jones were made acquainted with the use Shannon meant to put it to, they assented. When Carter and Cook accepted the note, they assented. So that we have the concurrence, the *consensio mentium* of all the parties to the arrangement.

The theory of the case entertained by the circuit court shut out from the jury this view of it, and denied to plaintiff the benefit of having it considered on the trial. The direction to the jury, that if the matters of the special plea were proved, they must find for the defendant, obstructed a view of the case, as we have attempted to expound it. There was no proof of an " authority" to Shannon to bind Carter and Cook by the collateral agreement, unless the mere delivery of the note was *ipso facto* conclusive, or an estoppel upon them. That contract did not affect them unless they authorized it or ratified it unless they took the note, resting upon the considerations moving between Shannon, Power and Jones. If, however, they received the note in discharge of a debt from Shannon, and ignorant of the agreement, then these defenses cannot be made, and the promise is direct to them, the consideration being the discharge of Shannon's debt.

The theory of the case manifested by the instructions granted and refused, either altogether precluded or so obscured this aspect of the plaintiff's title to recover, that it could not and did not receive that consideration which the testimony in support of it merited.

On a second trial the facts can be more fully and distinctly developed, the rules of law more clearly apprehended and applied, and, we doubt not, a result attained which will be satisfactory both on the law and the facts.

*Re-argument refused.*

TARBELL, J., *dissenting:*

On petition for re-argument.   Upon this application I have more carefully examined the record, the facts presented and the arguments of counsel.   Neither Carter and Cook, nor Mrs. Adams advanced any new consideration for the note sued on.   They parted with no money nor property.   This fact seems not to be pressed in the case with the importance which it seems to me to possess.   I do not understand Shannon to have been indebted to Carter and Cook, though he said to Power and Jones that he was so indebted, and wanted the note to hand to them.   Mrs. Adams testifies, that Shannon was indebted to the estate of her deceased husband in the sum of about $3,000, for which Carter and Cook were his sureties ; that she received the note sued on from them in payment of that indebtedness ; that she knew nothing of the contract for the payment of the note in subscriptions and advertising until suit was brought; and received the note in good faith.

This is the case in a nutshell.   Power and Jones injudiciously put their note in circulation, absolute and unconditional on its face, but payable to Carter and Cook, who were the sureties, and, otherwise, the creditors of Shannon.   Under the circumstances detailed in the evidence, Carter and Cook were put upon inquiry as to this note, thus, in their absence and without their knowledge, made payable to them.   In view of the facts, although the arrangement between Power and Jones and Shannon was unwisely and unguardedly executed by the former, I am of the opinion that they may be considered the innocent parties in the transaction.

Neither money nor property was advanced upon the note ;  no debts were legally discharged, nor rights changed by the transfer ;  if Mrs. Adams receives nothing on the note, she gave nothing for it; and Carter and Cook remain, as before, the sureties of Shannon.

Upon general principles, as well as technically, under our statute, the consideration of this note is open to the fullest inquiry, and the cotemporaneous contract ought to be received in- evidence, or most certainly not excluded until after the examination of Shannon, and Carter and Cook shall justify such a course. At present, the facts now before us impress me with the conviction that there should be no restrictions upon the examination on another trial, but that the facts should be more fully developed than before, which I consider essential to a just application of the rare and novel principles of law involved, upon which it is not my purpose to give my views until this case shall return hither, as I expect it will, when it is to be hoped we shall be placed in possession of all the facts. I concur in sending this case back for this purpose, reserving my opinion, untrammelled, in the meantime. This is all I intend by this memorandum, which expresses my sense of the justice of this case, as at present presented, somewhat independent of the technical rules of law reserved to be defined on another occasion.