# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-01158-SCT

*MISSISSIPPI   INSURANCE   GUARANTY
ASSOCIATION*

*v.*

*MS   CASUALTY   INSURANCE   COMPANY   AND
AMERICAN RELIABLE INSURANCE COMPANY,
INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2005 |
| TRIAL JUDGE: | HON. WILLIAM JOSEPH LUTZ |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES D. HOLLAND |
| | LOUIS GLAZIER BAINE, JR. |
| | ROBERT S. ADDISON |
| | TERRY R. LEVY |
| | JASON HOOD STRONG |
| ATTORNEYS FOR APPELLEES: | KELLY D. SIMPKINS |
| | WALTER D. WILLSON |
| | ROSEMARY G. DURFEY |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/26/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Aggrieved by the Madison County Chancery Court's grant of summary judgment in

favor of MS Casualty Insurance Company and American Reliable Insurance Company, Inc.,

the Mississippi Insurance Guaranty Association appeals to us. Finding no reversible error, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. MS Casualty Insurance Company (MS Casualty) is a Mississippi-based insurance company. It began issuing workers' compensation insurance policies in 1993. American Reliable Insurance Company, Inc. (American Reliable) is an Arizona-based insurance company which also formerly issued workers' compensation insurance policies. General Reinsurance Corporation (Gen Re) was the reinsurer of MS Casualty's workers' compensation policies from January 1, 1993, to December 31, 1995. American Reinsurance Company (Am Re) was the reinsurer of MS Casualty's workers' compensation policies effective January 1, 1996. Gen Re was the reinsurer of American Reliable's workers' compensation policies.

¶3. On September 28, 2000, American Reliable exited the workers' compensation business by entering an "Assumption Reinsurance Agreement" (ARA) with Legion Insurance Company (Legion), a Pennsylvania insurance company. MS Casualty followed suit on September 29, 2000. The ARAs were approved by the Mississippi Department of Insurance. The ARA between MS Casualty and Legion retroactively transferred MS Casualty's obligations under the policies to Legion as of January 1, 1993, through December 31, 2000. Also, the ARA between American Reliable and Legion retroactively transferred American Reliable's obligations to Legion as of October 1, 1999, through December 31, 2000. MS Casualty and American Reliable ceded all outstanding net loss and voluntary unearned

2

premium reserves to Legion. Gen Re and Am Re, the reinsurers, entered into assignment agreements which transferred to Legion all obligations they owed MS Casualty and American Reliable. As of January 1, 2001, Legion had sole responsibility to the policyholders and claimants.

¶4. Legion sent policyholders "Certificates of Assumption" stating that Legion would be responsible for any claims under the policies. Legion requested that all future claim requests be directed to AmFed Companies, its claims administrator, and directed that all future premiums be paid to Legion. The certificates also stated that Legion would be responsible for any future claims. Legion did not contact the claimants who were already receiving benefits under the MS Casualty and American Reliable policies.

¶5. Subsequently, Legion entered rehabilitation due to cash flow problems. The Pennsylvania Insurance Commissioner petitioned for liquidation of Legion, and on July 25, 2003, liquidation was ordered by the Commonwealth Court of Pennsylvania. The insurance commissioner was appointed as the statutory liquidator (Liquidator) and was responsible for making arrangements for continued payment of claims under Legion's policies.

¶6. The Liquidator ordered that policyholders asserting a right to proceeds of a reinsurance agreement to which Legion was a party should file a petition to intervene with the court. Subsequently, the Liquidator filed an emergency application for stay pending appeal or confirmation of automatic stay with respect to the portion of the court's Order of Liquidation allowing direct access to reinsurance. Gen Re and Am Re were ordered to pay any monies they would have owed to Legion as reinsurance to the Liquidator.

3

¶7.     Following the court's entry of the Order of Liquidation, the Mississippi Insurance Guaranty Association (MIGA), by statutory authority, stepped into the shoes of Legion to protect the interests of Legion's Mississippi policyholders and claimants.  MIGA was statutorily created by the Mississippi Legislature to pay "covered claims under direct insurance" when an insurer becomes insolvent.

¶8.     After reviewing the claims made to Legion, MIGA decided that the claims were not "covered claims under direct insurance" within the meaning of the statute. MIGA requested MS Casualty and American Reliable to pay any claims made under the policies to avoid numerous multiparty lawsuits filed by the claimants.  There were 181 claims at issue.  Rather than having to deal with all of these potential lawsuits, MIGA requested MS Casualty and American Reliable to try one suit before a chancellor to decide if the claims were "covered claims under direct insurance."  MIGA agreed to reimburse MS Casualty and American Reliable for any claims the companies wrongly paid if a chancellor ordered MIGA to do so.

¶9.     MS Casualty and American Reliable thereafter commenced suit against MIGA in the Madison County Chancery Court demanding (1) reimbursement of claims paid by MS Casualty and American Reliable, and (2) MIGA's assumption of liability for future claims. The reinsurers, Gen Re and Am Re, were original parties to the suit, but they were dismissed by MS Casualty and American Reliable because Gen Re and Am Re were ordered to pay their monies to the Liquidator.

4

¶10.    Chancellor William J. Lutz conducted a hearing on May 3, 2005, on the motion for summary judgment filed by MS Casualty and American Reliable.[1]  The chancellor concluded that (1) the ARAs constituted a novation between MS Casualty and American Reliable and Legion, which ceded to Legion all responsibilities previously assumed by MS Casualty and American Reliable; (2) the claims constituted covered claims according to the statute; (3) the policies assumed by Legion were direct insurance according to the statute; and, (4) the policyholders, and not the claimants themselves, were the only ones to whom notice had to be given concerning the ARA.  The chancellor granted summary judgment in favor of MS Casualty and American Reliable and ordered MIGA to reimburse past claims and to assume payments of future claims.[2]

¶11.    Further, the chancellor recognized that the reinsurers, Gen Re and Am Re, were the insurance companies that should be liable for the claims.  The reinsurers were obligated to pay the claims according to the reinsurance contracts; however, Gen Re and Am Re had already been ordered to pay that sum to the Liquidator.  Gen Re and Am Re had refused MIGA's demand that they pay MIGA directly inasmuch as this action would have resulted in double payment by Gen Re and Am Re.  The chancellor denied MIGA's motion to rejoin the reinsurers since it was the opinion of the chancellor that MS Casualty and American Reliable should never have been parties to the suit.  The chancellor urged MIGA to sue Gen

---

[1]The chancellor held a total of three hearings on this matter.

[2]MIGA was ordered to reimburse MS Casualty the sum of $3,371,562.30 and American Reliable the sum of $213,426.89.

Re and Am Re if MIGA felt that the Liquidator would not cover the claims of the Mississippi claimants.[3] The chancellor also denied MIGA's motion to stay the grant of summary judgment for further discovery. The chancellor further ordered MIGA to immediately review the claims files to determine the specific dollar amount of reimbursement owed to MS Casualty and American Reliable.

¶12. MIGA did not immediately start paying the claims as the chancellor ordered. In a subsequent hearing on May 26, 2005, MIGA argued before the chancellor that some of the claims were from claimants who did not live in Mississippi and, thus, MIGA was not liable for those claims. The chancellor allowed MIGA extra time to review seven claims files and ordered MIGA to file a brief report concerning its opinion on liability as to those seven claims.[4]

¶13. At the final hearing on June 8, 2005, the chancellor ruled that MIGA was liable for six of the seven contested nonresident claims. The chancellor made a detailed finding on the record as to why MIGA was or was not liable for each claim. The chancellor also denied MIGA's motion for a full accounting of the funds of MS Casualty and American Reliable.

---

[3]Throughout the first hearing on this matter, the chancellor repeatedly stressed that the reinsurers, Gen Re and Am Re, had responsibility for paying the claims. When the chancellor granted summary judgment, he offered to assist MIGA in bringing Gen Re and Am Re before the court if Mississippi policyholders and claimants did not receive appropriate relief from the Liquidator.

[4]Instead of a brief report, MIGA filed a report that was nearly 400 pages long. This report concerned issues beyond whether MIGA was liable for the claims of the seven nonresidents.

Finally, the chancellor granted the motion to strike portions of the record considered redundant, as filed by MS Casualty and American Reliable.[5]

¶14.    It is from the chancellor's grant of summary judgment in favor of MS Casualty and American Reliable that MIGA appeals to us.

## DISCUSSION

¶15.    This Court reviews a grant of summary judgment de novo. *Richardson v. Norfolk Southern Ry.*, 923 So.2d 1002, 1007 (Miss. 2006) (citing *Leffler v. Sharp*, 891 So.2d 152, 156 (Miss. 2004)); *Pitts v. Watkins*, 905 So.2d 553, 555 (Miss. 2005) (citing *Aetna Cas. & Sur. Co. v. Berry*, 669 So.2d 56, 70 (Miss. 1996)).  This Court shall consider "all the evidentiary matters before it–admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.  The evidence must be viewed in the light most favorable to the party against whom the motion has been made."  *McDaniel v. Shaklee U.S., Inc.*, 807 So.2d 393, 395 (Miss. 2001) (citing *Lumberman's Underwriting Alliance v. City of Rosedale,* 727 So.2d 710, 712-13 (Miss. 1998)).  "If any triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed."  *Id.* (citing *Brown v. Credit Ctr., Inc.,* 444 So.2d 358, 362 (Miss. 1983)).

¶16.    Turning to the issues with which we are confronted today, this Court must decide (1) whether the Assumption Reinsurance Agreements (ARA's) constituted a novation; (2) whether the claims are "covered claims under direct insurance;" (3) whether MIGA is liable

---

[5]The chancellor struck pages 2-10 of the nearly 400 page report submitted by MIGA that went beyond the scope of the subject of the claims of the nonresidents.

for claims from nonresidents; and, (4) whether the chancellor abused his discretion in (a) denying MIGA's motion to stay summary judgment to allow further discovery, (b) denying MIGA's motion for a full accounting, and (c) granting MS Casualty's and American Reliable's motion to strike portions of the record.

I. **WHETHER THE ASSUMPTION REINSURANCE AGREEMENTS BETWEEN MS CASUALTY AND AMERICAN RELIABLE AND LEGION CONSTITUTED A NOVATION WHICH RELEASED MS CASUALTY AND AMERICAN RELIABLE FROM LIABILITY UNDER THE WORKERS' COMPENSATION POLICIES.**

¶17.    We first address the issue of whether novation was accomplished by substituting Legion for MS Casualty and American Reliable in the insurance policies. "[A] novation may occur where the debt remains the same, but a new debtor is substituted.  In such event, the original debtor is acquitted, his obligation is extinguished, and the creditor contends himself with the obligation of the second debtor." *Greenwood Leflore Hospital Com. v. Turner*, 213 Miss. 200, 56 So.2d 496, 497 (1952); *Adams v. Power*, 48 Miss. 450 (1873).  The parties must intend novation for novation to be accomplished.  *Morgan v. Jackson Ready-Mix Concrete*, 247 Miss. 863, 157 So.2d 772, 780 (1963).

¶18.    Also, the creditor must assent to the novation. *Greenwood Leflore Hospital,* 56 So.2d at 498.  In *First American National Bank of Iuka v. Alcorn, Inc.*, 361 So.2d 481, 487-88 (Miss. 1978), this Court held that assent may be implied.  We stated:

> The rule is also established that the release of one debtor and the substitution of another may be implied from the circumstances absent an express substitution. *American Blakeslee Mfg. Co. v. Martin & Son,* 128 Miss. 302, 91 So. 6 (Miss. 1922).  However, this requires substantial proof that the

8

creditor impliedly accepted the new debtor in the place of the old and it must not appear that the creditor intended to hold both new and old debtor for the obligation. This determination is factual and necessary to an implied novation and release of the old debtor. ***American Blakeslee,*** *supra*.

*Id.*

¶19. Since no parties signed novation agreements, there is not express agreement. However, we agree with the chancellor and believe that novation was accomplished through implied assent. Legion agreed to be liable for any claims under the policies. MS Casualty and American Reliable transferred all of their reserves set aside to pay claims under the policies to Legion. All premiums were thereafter paid to Legion instead of MS Casualty and American Reliable. Therefore, in accordance with ***Greenwood Leflore Hospital***, the debt remained the same, but Legion was substituted for MS Casualty and American Reliable. Additionally, in accordance with ***Morgan***, the parties obviously intended novation. The policyholders began paying their premiums to Legion after Legion sent the policyholders notice in the form of assumption certificates. None of the policyholders protested; but instead, they paid their premiums to Legion, which continued to pay all current claims that MS Casualty and American Reliable had previously been paying. Through their actions, the parties no doubt intended for Legion to be liable for any claims.

¶20. However, MIGA contends that, in accordance with ***First American National Bank***, the policyholders did not impliedly accept novation because the language of the assumption certificates is vague. Further, MIGA argues that the injured claimants also had vested rights according to Mississippi's workers' compensation laws. MIGA therefore argues that not

9

only did the policyholders not impliedly assent to novation, but the claimants' assent was required as well. The chancellor disagreed. In his final judgment entered on June 8, 2005, the chancellor stated, inter alia:

> 5. The assumption reinsurance agreements, whether a novation is required or not, were a novation. The certificates of assumption sent by Legion to the policyholders specifically stated:
>
> The effect of this agreement on you is that Legion Insurance Company is now the insurer of your policy and is responsible for paying all claims due under your policy.
>
> In the Court's opinion, the above language was clear as this transaction does not deal with claimants who may be very ignorant of what these things mean, but instead with businessmen who are the actual insureds. The actual claimants have absolutely nothing to do with who provides these insurance policies. The Court finds that the insured (sic) accepted by not canceling the insurance or voicing any concerns after they received the notices. The insureds made payments directly to Legion and filed claims with Legion.

We agree with the chancellor. The language of the certificates was clear; therefore, implied consent from the policyholders can be assumed. Additionally, MIGA contends that the claimants have vested workers' compensation rights, but there is no citation to statutory authority or case law to prove its point. We have previously addressed a party's failure to support argument with citation to authority:

> This Court routinely holds an appellants's failure to cite to any legal authority to support [an] argument will procedurally bar that issue from being considered on appeal. *Carter v. Miss. Dep't of Corr*., 860 So.2d 1187, 1193 (Miss. 2003) (citing *McClain v. State*, 625 So.2d 774, 781 (Miss. 1993)). Because [the appellant] failed to support this allegation of error with any legal authority, we find [the appellant] is procedurally barred from having this Court consider this issue on appeal.

*In re Adoption of a Minor Child*, 931 So.2d 566, 578 (Miss. 2006). We find that the policyholders are the only parties who needed to assent to novation. Thus, assent can be implied and novation occurred.

II. **WHETHER THE ASSUMPTION REINSURANCE AGREEMENTS BETWEEN MS CASUALTY AND AMERICAN RELIABLE AND LEGION CONSTITUTE DIRECT INSURANCE.**

¶21. We next address whether the assumption reinsurance agreements constitute direct insurance. According to Miss. Code Ann. Section 83-23-105, MIGA is only responsible for claims stemming from direct insurance and not reinsurance.

¶22. The contracts between Legion and MS Casualty and American Reliable were titled "assumption reinsurance agreements." However, this phrase is misleading. There is no precedent from this Court that defines direct insurance. However, the United States Supreme Court has stated that:

> Reinsurance comes in two basic types, assumption reinsurance and indemnity reinsurance. In the case of assumption reinsurance, the reinsurer steps into the shoes of the ceding company with respect to the reinsured policy, assuming all its liabilities and its responsibility to maintain required reserves against potential claims. The assumption reinsurer thereafter receives all premiums directly and becomes directly liable to the holders of the policies it has reinsured.

> In indemnity reinsurance, which is at issue in this case, it is the ceding company that remains directly liable to its policy-holders, and that continues to pay claims and collect premiums. The indemnity reinsurer assumes no direct liability to the policyholders. Instead, it agrees to indemnify, or reimburse, the ceding company for a specified percentage of the claims and expenses attributable to the risks that have been reinsured, and the ceding company turns over to it a like percentage of the premiums generated by the insurance of those risks.

11

*Colonial Am. Life Ins. Co. v. Commissioner*, 491 U.S. 244, 247, 109 S.Ct. 2408, 2411, 105 L.Ed.2d 199, 207 (1989).

¶23. The agreements are clearly direct insurance. Legion stepped into the shoes of MS Casualty and American Reliable. None of the terms and conditions of the contracts changed; but instead, the names of the parties were simply substituted. The reserves were transferred to Legion, and the policyholders began paying premiums to Legion. The risk was entirely upon Legion; therefore Legion was *directly liable*. Thus, we find that the agreements constituted direct insurance rather than reinsurance.

### III. WHETHER THE CLAIMS ARE COVERED CLAIMS.

¶24. Next, we must decide whether the claims at issue are "covered claims." A covered claim is defined as:

> "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) the claimant or insured is a resident of this state at the time of the insured event, provided that for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. "Covered claim" shall not include any amount awarded as punitive or exemplary damages; or sought as a return of premium under any retrospective rating plan; *or due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise and shall preclude recovery thereof from the insured of any insolvent carrier to the extent of the policy limits*.

Miss. Code Ann. § 83-23-109(f) (emphasis added). MIGA, by statute, is only permitted to pay "covered claims." *Miss. Ins. Guar. Ass'n v. Byars*, 614 So.2d 959, 963 (Miss. 1993).

12

MIGA argues that novation never occurred, which rendered MS Casualty and American Reliable reinsurers to Legion based upon the plain language of the title of the Assumption Reinsurance Agreements. MIGA argues that because MS Casualty and American Reliable are still solvent, they are responsible for paying the claims under the policies. Further, MIGA argues that it cannot pay an insurance company based upon the plain language of Miss. Code Ann. § 83-23-109(f); but instead, it can only pay policyholders or claimants.

¶25. MIGA's argument is misplaced. The chancellor correctly perceived the issue as being whether the claims made to Legion were covered claims stemming from direct insurance. The claims were made to Legion at the time of insolvency, and Legion is the direct insurer because novation occurred. This has nothing to do with MS Casualty and American Reliable – the claims were not made to those insurance companies, and they are not reinsurers.

¶26. MIGA is attempting to avoid reimbursing MS Casualty and American Reliable based on a misinterpretation of the applicable statute. MIGA agreed to allow the chancellor to decide whether the claims made to Legion were "covered claims" stemming from "direct insurance." MIGA requested MS Casualty and American Reliable to pay the claims to avoid multiple lawsuits, and if the chancellor ruled in the insurance companies' favor, they would be reimbursed by MIGA. However, MIGA now claims that, according to statute, it cannot make any payments to insurance companies. However, the chancellor ruled that MIGA was responsible for *reimbursing* MS Casualty and American Reliable for the claims it would have owed under the statute because it was liable for the claims to Legion. Thus, the chancellor did not err inasmuch as his decision does not conflict with the statute.

13

## IV. WHETHER MIGA IS LIABLE FOR CLAIMS FROM NONRESIDENTS.

¶27. We now address whether the claims of non-residents may be covered by statute. MIGA argues that it is not liable for any claim where the claimant is not a resident of Mississippi, while MS Casualty and American Reliable argue that the plain language of the statute states in part that either the claimant or the policyholder must be a resident.

> "Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this article applies issued by an insurer, if such insurer becomes an insolvent insurer and (1) *the claimant or insured is a resident of this state at the time of the insured event*, provided that for entities other than an individual, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state.

Miss. Code Ann. § 83-23-109(f) (emphasis added); *see also **Miss. Ins. Guar. Ass'n. v. Byars***, 614 So.2d 959 (Miss. 1993). The statute clearly states that either the claimant or the policyholder must be a resident of Mississippi. There is one more step nonresident claimants must make. Miss. Code Ann. § 83-23-123(2) (Rev. 1999) provides:

> (2) Any person having a claim which may be recovered under more than one (1) insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured, except that if it is a first party claim for damage to property with a permanent location, he shall seek recovery first from the association of the location of the property, *and if it is a workmen's compensation claim, he shall seek recovery first from the association of the residence of the claimant*. Any recovery under this article shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.

14

(emphasis added). Thus, MIGA is liable for claims to Legion from nonresident claimants whose policyholders were located in Mississippi at the time of the insured event if those claimants first tried to seek recovery in their home states and were denied. The chancellor made a detailed finding on the record of each of the seven nonresident claims in dispute.

I have reviewed these. And let me give you my analysis per case.

Miguel Olivares. ... He is a resident of Chamblee, Georgia. His employer is All Points Construction of Caldonia, Mississippi. There was an application to the Georgia Guaranty Fund and it was denied. And, as per the statute, since the company, the policy holder of the insured, is in Mississippi, then that is a claim that MIGA must pay. They have followed the statutory scheme.

Terry Pellegrin, resident of Theodore, Alabama. His employer, A & B Electric Company, is in Pascagoula, Mississippi. They applied to the Alabama Insurance Guaranty Association and were denied. Once again, following the statutory scheme since A & B Electric is in Mississippi, then that is MIGA's responsibility.

Cathy Ryner. Now a resident of Tennessee, we're convinced. We just couldn't determine which town in Tennessee. Jackie's International, a Madison, Mississippi business. Applied to Tennessee Insurance Guaranty Association and denied. So, they come under the statutory scheme and MIGA is liable.

Phillip Stockman. Residence, Vernon, Alabama. Master Craft Builders, Inc. of Booneville, Mississippi. The policyholder applied to Alabama Insurance Guaranty Association and was denied. Once again, coming within the statutory scheme. MIGA is liable.

Anthony Wallace. Residence, Eufala, Alabama. Employer, Wallace Amusement Company, Columbus, Mississippi. Applied to Alabama Insurance Guaranty and denied. Once again, coming within Mississippi statutory scheme. MIGA is liable. Now, there is a comment here about a possible girlfriend in West, Mississippi, but I don't think it really matters. The fact is he was treated as though he was an Alabama resident. And that is what seemed to be the case and statutory scheme took care of it.

15

Now, Marvin Gonzales. Residence, Grand Bay, Alabama. Employer, New Palace Casino, Biloxi, Mississippi. Applied to the Alabama Insurance Guaranty Association and was denied. Therefore, comes within the statutory scheme and MIGA is liable.

Now, on Louis Curtis Matthews. The vast majority of information that we had on this was that this guy was – Mr. Matthews was a resident, in fact of 1896 Dean, Memphis, Tennessee. A & B Electric is a Meridian, Mississippi Company, but there was never an application to Tennessee for relief. So, the Court holds that the Louis Curtis Matthews claim is not a liability of MIGA.

It is clear from the record that the chancellor did not err in that he unquestionably adhered to the statutory scheme of recovery.

## V. WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN DENYING MIGA'S MOTION TO STAY CONSIDERATION OF SUMMARY JUDGMENT FOR ADDITIONAL DISCOVERY.

¶28. This Court will review a trial judge's decisions concerning motions related to discovery for abuse of discretion. "[T]he decision to ... order further discovery rests within the sound discretion of the trial judge and will not be reversed unless his decision can be characterized as an abuse of discretion." *Marx v. Truck Renting & Leasing Assocs.,* 520 So.2d 1333, 1344 (Miss. 1987) (citing *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1193 (5th Cir. 1986)). The issue before us is whether the chancellor abused his discretion in denying MIGA's Rule 56(f) motion to stay the ruling of summary judgment for additional discovery. Rule 56(f) states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

16

Miss. R. Civ. P. 56(f). MS Casualty and American Reliable argue that MIGA filed its Rule 56(f) motion merely to delay payment of the judgment, while MIGA argues that the chancellor abused his discretion in granting the motion because there were material issues of fact in dispute. Specifically, MIGA claims that various facts relating to the issues of whether there was a novation, whether the claims were "covered claims," and whether the policies held by Legion constituted "direct insurance" were not present in the record. Further, MIGA claims that more facts are needed concerning dates of claims, dates of contract terminations, and amounts of reinsurance payments paid from Legion, Gen Re, and Am Re to MS Casualty and American Reliable. MIGA's Interrogatory responses answer the payment question:

¶29. MS Casualty and American Reliable clearly stated that they had not received any money from Legion or the reinsurers, Gen Re and Am Re. The amounts of premiums paid to Legion by policyholders and the claim dates are stated in the record. The contracts between MS Casualty and American Reliable ended with the assumption of the policies by Legion and with Gen Re and Am Re entering into new reinsurance agreements with Legion.

¶30. The record clearly demonstrates that MS Casualty and American Reliable had not received payment from any source, and all relevant dates are present in the record. The chancellor did not abuse his discretion in denying the motion.

VI. **WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN DENYING MIGA'S MOTION FOR A FULL ACCOUNTING.**

¶31.    MIGA file a motion for an accounting of the funds of MS Casualty and American Reliable.  MIGA presented no evidence that MS Casualty or American Reliable ever received funds that rightfully belonged to Legion, as revealed in the answers to Interrogatory Nos. 4, 12, and 13.  Furthermore, MIGA has not produced any evidence that either MS Casualty or American Reliable were dishonest in presenting their figures.  The record is complete, and the chancellor did not abuse his discretion in denying MIGA's motion for a full accounting.

## VII.    WHETHER THE CHANCELLOR ABUSED HIS DISCRETION IN GRANTING THE MOTION OF MS CASUALTY AND AMERICAN RELIABLE TO STRIKE PORTIONS OF THE RECORD.

¶32.    Finally, we must decide whether the chancellor erred in granting the motion of MS Casualty and American Reliable to strike portions of MIGA's claim review.  We review a trial judge's decision on whether to strike portions of the record for abuse of discretion.  *See Bowie v. Montforth Jones Mem'l Hosp.,* 861 So.2d 1037, 1042 (Miss. 2003); *see also Kilpatrick v. Miss. Baptist Med. Ctr.,* 461 So.2d 765, 767-68 (Miss. 1989).

¶33.    The chancellor conducted three hearings in this case.  During the second hearing, the chancellor allowed MIGA to inspect the files of seven claimants whose residency was in dispute.  The chancellor asked MIGA to file a brief report detailing the residency of those seven claimants.  At the third hearing, the chancellor made a detailed finding on the record stating that MIGA was liable for six of those seven claimants based upon the report.

18

¶34. The chancellor granted the motion of MS Casualty and American Reliable to strike portions of the report. MS Casualty and American Reliable argue that those portions were redundant or brought up new issues not raised before summary judgment was granted. MIGA ignored the chancellor's instructions. The chancellor stated in no uncertain terms:

> [W]e're not going to come back here and reargue anything....Get your bean counters to look at these files.

> Well, the hearing is going to be–all the hearing is going to be, and that's going to be it, is each one of these files, that you say should be exempted, you just come in and show me why. And I want some prior notice on it. I want something written, very brief.

Instead of following the chancellor's instructions, MIGA filed a report that was nearly 400 pages long. The report contained information that, as MIGA admits in its brief to this Court, concerned issues other than determining whether MIGA was liable for the claims of the seven nonresidents. "Our trial judges ... have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they do so at their own peril." *Bowie*, 861 So.2d at 1042. MIGA disobeyed the chancellor. MIGA gave redundant answers and more information than the chancellor said would be allowed. Therefore, MIGA acted at its own peril, and the chancellor did not abuse his discretion in striking the record.

## CONCLUSION

¶35. The chancellor did not err in finding that the Assumption Reinsurance Agreements clearly constituted a novation, thereby transferring all risk from MS Casualty and American Reliable to Legion. The chancellor likewise did not err in finding that the claims at issue

19

were "covered claims under direct insurance," and that, therefore, MIGA was responsible for paying those claims and was required to reimburse MS Casualty and American Reliable. Additionally the chancellor did not err in finding that MIGA was responsible for the claims of six of the seven nonresidents. Finally, the chancellor did not abuse his discretion in denying MIGA's motion to stay summary judgment for additional discovery, denying MIGA's motion for a full accounting, or granting the motion of MS Casualty and American Reliable to strike portions of the record.

¶36. For the reasons stated, we affirm the final judgment of the Chancery Court of Madison County.

¶37. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., DIAZ, EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., NOT PARTICIPATING.**