# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-00639-SCT

*WILLIAM S. HARRIS*

*v.*

*TOM GRIFFITH WATER WELL & CONDUCTOR
SERVICE, INC.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2007 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | MARION COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | L. CLARK HICKS, JR |
| | L. GRANT BENNETT |
| ATTORNEYS FOR APPELLEE: | THOMAS J. LOWE, JR. |
| | RENEE M. PORTER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE MARION COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED - 01/28/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     William Harris sued his former employer, Tom Griffith Water Well & Conductor

Service, Inc. (Griffith Water Well, alternatively, Griffith),[1] in the Marion County Chancery

Court, alleging that Griffith had failed to compensate him fully for his services pursuant to

_____

[1]Throughout the opinion, "Griffith" refers to both Tom Griffith Water Well &
Conductor Service, Inc., and its owner, Tom Griffith.

a verbal agreement. Following trial, the chancellor entered a judgment in favor of Griffith, finding that the terms of their initial agreement had been modified and that Harris was not owed any money. The Court of Appeals reversed, and this Court granted Griffith's petition for writ of certiorari. Because the chancellor's ruling was supported by substantial evidence, we reverse the Court of Appeals and reinstate the judgment of the chancery court.

**I.**

¶2.     Harris began working for Griffith Water Well in 1992 on a part-time basis, but in 1994, he became a full-time salesman for the company. Harris and Griffith had a verbal agreement under which Griffith agreed to pay Harris a ten-percent commission on sales made by Harris. In addition to his commission, Harris was paid separately for administrative office work.

¶3.     The parties operated under this agreement for a few years; but, according to Griffith, in 1995 or 1996, the agreement was modified so that Harris was paid a set salary for his work as a salesman. Harris continued to receive two paychecks per week. Griffith withheld taxes from only one of the checks. According to Griffith, Harris requested two separate checks, but it was understood that Harris was no longer receiving commissions. From time to time, the amount of the checks would change. Griffith explained that the different amounts reflected the ups and downs of his business revenue, but he had attempted to pay Harris an annual salary of $52,000.

¶4.     According to Harris, the parties never agreed to modify the terms of the initial agreement. Harris testified that he would create invoices for his sales and submit them to

2

Griffith for commission payments, but Griffith never paid the full amount on these invoices. Instead, Harris considered the checks he received as payments toward the total amount of commission that he claimed Griffith owed him. Griffith testified that Harris had given him invoices, but he had told Harris the invoices were no longer needed because Harris was now on a fixed salary. Harris admitted that he had nothing in writing from Griffith acknowledging any debt.

¶5. Furthermore, Griffith's bookkeeper testified that, at some point, Griffith began paying Harris a set amount rather than an amount based on sales. She also testified that she never saw any invoices from Harris and that Harris never informed her that he was owed additional compensation.

¶6. In early 2002, Griffith told Harris that he could no longer afford to keep Harris employed, and their relationship was terminated. Two months later, Harris filed this breach-of-contract action. Griffith testified he was unaware that Harris believed he was owed additional compensation until Griffith received notice of Harris's suit.

**II.**

¶7. This case presents questions of law and fact. As for questions of fact, "[w]e will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous." *Stanley v. Miss. State Pilots of Gulfport, Inc.*, 951 So. 2d 535, 538 (Miss. 2006) (quoting *Williams v. Williams*, 843 So. 2d 720, 722 (Miss. 2003)).

3

Questions of law are reviewed de novo. ***Biglane v. Under The Hill Corp.***, 949 So. 2d 9, 14 (Miss. 2007) (citing ***Cummings v. Benderman***, 681 So. 2d 97, 100 (Miss. 1996)).

¶8.     The chancellor noted in his judgment that, absent a written agreement, the parties' intent was determined by their conduct and found that "there was essentially a contract of employment at will between the parties, initially based on Harris receiving a commission, as reflected by Griffith's payment method, and then changed to a weekly salary." The chancellor also held that the doctrine of laches applied, citing ***Hall v. Dillard***, 739 So. 2d 383 (Miss. Ct. App. 1999), and that Harris had acquiesced in the salary.

¶9.     In reversing the chancery court, the Court of Appeals couched the issue as "whether a novation of the agreement occurred that changed Harris's status from an independent contractor to an employee." ***Harris v. Tom Griffith Water Well and Conductor Serv. Inc.***, 2009 WL 176121 at ¶ 20. (Miss. Ct. App. Jan. 27, 2009). The court reasoned that,

> Based on our review of the record, we cannot find substantial evidence of a novation of the initial sales commission agreement. In this regard, we are mindful that Griffith testified that there was and that the chancellor, as the finder of fact, was entitled to accept Griffith's assertion that there was a novation. However, it cannot be overlooked that Griffith could not state with any specificity as to when the novation occurred, nor could he produce any documentation that corroborated his testimony. Under these circumstances, we cannot say that there was substantial evidence that a novation in fact occurred.

*Id.* at ¶ 28. The Court of Appeals did not cite any authority pertaining to contract law in reaching its decision.

4

¶10.    We disagree that the concept of novation is applicable to this case. "[A] novation may occur where the debt remains the same, but a new debtor is substituted.  In such event, the original debtor is acquitted, his obligation is extinguished, and the creditor contents himself with the obligation of the second debtor." *Miss. Ins. Guar. Ass'n v. MS Cas. Ins. Co.*,  947 So. 2d 865, 871 (Miss. 2006) (quoting *Greenwood Leflore Hosp. Comm'n v. Turner*, 213 Miss. 200, 56 So. 2d 496, 497 (1952)).  *See also First Am. Nat'l Bank of Iuka v. Alcorn, Inc.*, 361 So. 2d 481, 487 (Miss. 1978) (citing *Miss. Motor Fin., Inc. v. Enis*, 254 Miss. 625, 181 So. 2d 903 (1966)).  The Restatement of Contracts defines novation as a contract that

> (a) discharges immediately a previous contractual duty or a duty to make compensation, and
>
> (b) creates a new contractual duty, and
>
> (c) includes as a party one who neither owed the previous duty nor was entitled to its performance.

Restatement (First) of Contracts § 424 (1932).

¶11.    In other words, a novation involves a substituted contract.  In the instant case, the parties to the contract did not change and no new obligations were created.  The issue is whether the terms of an existing verbal agreement were modified, i.e., whether the initial agreement that Harris would be paid commissions on his sales was modified so that Harris thereafter was to be compensated by a fixed salary.[2]

---

[2]Griffith argues for the first time on appeal that the contract is unenforceable under the statute of frauds, Mississippi Code Section 15-3-1, because it was not in writing.  Miss. Code Ann. § 15-3-1 (Rev. 2003).  Even if this issue were preserved for appellate review, which is not the case, we note that

¶12. "Any contract, however made or evidenced, can be discharged or modified by subsequent agreement of the parties." *Anderton v. Bus. Aircraft, Inc.*, 650 So. 2d 473, 475-76 (Miss. 1995) (quoting *Kelso v. McGowan*, 604 So. 2d 726, 731 (Miss. 1992)). "[T]he subsequent actions of the parties pursuant to a contract may support a finding that the original contract has been modified to an extent consistent with the subsequent course of conduct." *Kight v. Sheppard Bldg. Supply, Inc.,* 537 So. 2d 1355, 1359 (Miss. 1989) (citing *Stinson v. Barksdale*, 245 So. 2d 595, 597-98 (Miss. 1971)).

¶13. In the instant case, we cannot say that the chancellor abused his discretion in finding that the conduct of the parties evidenced their intent to modify the terms of the original agreement. As the plaintiff, Harris bore the burden of proving his breach-of-contract claim, *Garner v. Hickman*, 733 So. 2d 191, 195 (Miss. 1999) (citing *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss.1992)), and Harris could not offer any documentary evidence, other than his own ledgers, that he was owed additional compensation. Griffith consistently maintained that the verbal agreement had been modified so that Harris would receive a set salary rather than a commission. As the Court of Appeals acknowledged, based on Griffith's testimony, "Harris acquiesced in the change." *Harris*, 2009 WL 176121 at ¶ 21. The case

> Contracts of present employment and of indefinite duration generally are held not to be within the meaning of this statute requiring contracts not to be performed within fifteen months to be in writing, since such contracts are terminable at any time by the parties, and are therefore susceptible of performance within a year from the time of their inception.

*U.S. Finance Co. v. Barber*, 247 Miss. 800, 810, 157 So. 2d 394, 397 (1963).

essentially hinged on the conflict between Harris's and Griffith's testimony, and, as the finder of fact, the chancellor was within his discretion to find that Griffith's version was the most credible.

¶14. We find that there was substantial evidence to support the chancellor's findings. Accordingly, we reverse the judgment of the Court of Appeals and reinstate and affirm the chancery court's judgment in favor of Griffith.

¶15. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE JUDGMENT OF THE MARION COUNTY CHANCERY COURT IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR.**