# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01345-COA

IN THE MATTER OF THE ESTATE OF                           APPELLANT
GEORGE LEE JONES, DECEASED:
JIMMY FAIRCHILDS, EXECUTOR OF THE
ESTATE OF GEORGE LEE JONES, DECEASED

v.

DELTA FOUNDATION INC.                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2016 |
| TRIAL JUDGE: | HON. VICKI R. BARNES |
| COURT FROM WHICH APPEALED: | WARREN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | FRANK G. VOLLOR |
| ATTORNEY FOR APPELLEE: | TONYA P. FRANKLIN |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/05/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. This dispute stems from two probated claims against George Jones's estate by creditor Delta Foundation Inc. (Delta) in the Chancery Court of Warren County. The two claims of $88,740.05 and $116,228.17 relate to two promissory notes taken out by Three Rivers Transit Inc. (Three Rivers) in 2005 and renewed in 2008. In 2005, Jones signed the notes individually and on behalf of Three Rivers. In 2008, however, he did not sign the notes individually but only on behalf of Three Rivers. Jones passed away, and Delta probated its claims, attaching the 2008 notes. The executor of Jones's estate (the Estate)

objected, claiming that the debt belonged to Three Rivers, not Jones individually. Delta filed a motion to amend its probated claims in order to attach the 2005 notes. The motion was granted, but the 2008 notes were again erroneously attached to the claims.

¶2.     Delta then filed an "amended motion to amend probate claim" to correct the error, which is the subject of this appeal. The Estate again objected, arguing that the 2005 notes were extinguished by the 2008 notes. After a hearing, the chancellor granted Delta's motion to amend the probated claims. Aggrieved, the Estate appealed the ruling.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.     Jones operated Three Rivers, a business which transported and set up mobile and manufactured homes. Delta is a non-profit organization that assists small-business owners with financing their operations in order to encourage them to remain in rural areas. Documents entered into evidence establish that in February 2000, a "Loan Transaction" was entered into between Three Rivers and Delta evidenced by a promissory note and deed of trust to secure a loan of $122,750, maturing March 1, 2007. The deed of trust was signed by Jones on behalf of the "Debtor" Three Rivers.[1] On the same date, Jones and his wife executed two deeds of trust to Delta to secure the loan of $122,750 and another loan of $152,250 to Three Rivers, also maturing on March 1, 2007.[2]

¶4.     On January 15, 2005, Jones and Lee Pinkston executed two promissory notes

---

[1] The Three Rivers deed of trust attached a property description on approximately nine acres in Warren County, Mississippi.

[2] The Jones deeds of trust secured "all future and additional advances" by Delta to Three Rivers and "any and all other indebtedness" of Three Rivers to Delta. The property descriptions were of a mobile home and the land on which it was located in Warren County.

"Individually and on behalf of Three Rivers Transit, Inc." Loan number 56 included a principal of $109,787.57 and loan number 113 of $141,319.32, with monthly payments of $1,111.54 and $1,430.79 respectively. The "Borrowers" were Three Rivers, Jones, and Pinkston. Both loans were provided at a four-percent interest rate for 120 months, with the final payment due in January 2015. The notes recited that they were secured by a security agreement which encumbered certain personal property of the Joneses. The 2005 notes provide:

> Borrowers waive demand, protest, presentment, notice of demand, protest, nonpayment and dishonor, and all other notices. No extension of time for the payment of this Promissory Note made by agreement with any person now or hereafter liable for the payment of this Promissory Note shall operate to release, discharge, modify, change, or affect the original liability under this Promissory Note of Borrowers, either in whole or in part, if Borrowers are not a party to such agreement.

¶5. On September 22, 2008, the loans were renewed. The "Borrower" was Three Rivers. The monthly payments were lowered, the interest rate was increased, and the final payment dates were extended. The loan numbers of 56 and 113 did not change, and the principal amounts had been reduced to $91,801.15 and $117,570.39, respectively, with monthly payments of $1,065.89 and $1,365.09. The interest rate was increased to seven percent for 120 months, with the final payment due in October 2018. The note recited that it was secured by several parcels of real property: approximately nine acres of land for Three Rivers' shop in Vicksburg, Jones's home in Vicksburg,[3] and two acres in West, Mississippi, as well as a 2008 life insurance policy for $200,000. The notes specify that the lender is not

_____

[3] The only deeds of trust in the record are those executed in 2000 by Three Rivers on approximately nine acres of land and by the Joneses on the mobile home and lot.

required to rely on this security "but may proceed directly against the Borrower."

¶6.     Importantly, while the 2008 promissory notes were again executed by Jones and Pinkston, the signature block was different from the 2005 notes. On these later notes, Jones signed under the typed name "Three Rivers" without any indication of agency status, but also without any indication of individual liability. Pinkston signed the notes as a partner and guarantor.[4] The notes state:

> No renewal or extension of this Note, delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note shall affect the liability or obligations of the Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

¶7.     In May 2012, while driving for the company, Jones was tragically killed in a motor-vehicle accident. His estate was opened in the Warren County Chancery Court. The first publication for creditors was issued on March 6, 2013. Delta timely filed two probated claims of $88,740.05 and $116,228.17 respectively for each loan. The Estate objected to both probated claims, arguing the indebtedness belonged to Three Rivers, not Jones individually, due to the fact that Jones had not signed the 2008 notes in an individual capacity.

¶8.     In March 2015, a hearing was held on the claims, where counsel for Delta claimed she had attached only the 2008 notes and loan-payoff schedule to the claims and inadvertently failed to attach the notes signed in Jones's individual capacity. The chancellor

---

[4] Attached to the copies of the 2008 promissory notes submitted into evidence by the Estate was a "Final Checklist for General Promissory Note" listing the Borrower as Three Rivers. One of the items on the list stated: "The Promissory Note is co-signed by a third party. Therefore, Lee Pinkston must also sign the Note."

4

continued the hearing, and Delta filed a motion to amend its probated claims in order to attach the individual notes. In its motion, Delta stated the indebtedness was incurred by Three Rivers, Jones individually, and Pinkston individually, and the intended purpose of the notes was for Three Rivers and Jones to be responsible for the debt. Delta argued that nothing had changed in its probated claims;[5] the additional promissory notes would be merely "additional documentation of the claim," as required by statute, that "simply perfect[ed] the claim as filed." The chancery court granted the motion.

¶9. Accordingly, in June 2015, Delta filed the amended probated claims, but again attached the same 2008 notes and payoff schedule that had been originally offered. Delta then filed an "Amended Motion to Amend Probate Claim," finally attaching the 2005 notes. Delta attached the same Loan Payoff sheet as it had for the 2008 notes, again calculating the debt pursuant to a seven-percent interest rate. The Estate renewed its objection, arguing that Delta's inadvertent omission of the 2005 promissory notes executed by Jones in his individual capacity was irrelevant because the 2005 notes were "superseded and nullified" by the execution of the 2008 notes as a matter of law, and Jones was no longer responsible for the debt. The Estate claimed the 2008 notes constituted a "novation" which extinguished

---

[5] Delta reported:

> The documentation attached to the original probated claims was the promissory notes executed by George Jones on behalf of Three Rivers Transit. Counsel inadvertently left out the promissory notes executed by George Jones in his official [sic] capacity. The terms of the promissory notes executed by Three Rivers Transit and George Jones, individually, were identical and [the] intended purpose was for the Corporation to be responsible as well as George Jones individually.

5

the 2005 notes. The Estate cited several cases to the effect that "the execution of a renewal note with full knowledge of the facts constituting a defense to the original note waives that defense as to the renewal," and the debtor "becomes obligated to pay the new note." *See, e.g.*, *Citizens Nat'l Bank v. Waltman*, 344 So. 2d 725, 728 (Miss. 1977) (citing *Gay v. First Nat'l Bank*, 172 Miss. 681, 686, 160 So. 904, 905 (1935)).

¶10.    In reply, Delta argued the inapplicability of the Estate's cases because Delta was not asserting a defense, but rather a cause of action to enforce Jones's promise to pay the debts. Additionally, Delta denied the execution of the 2008 notes constituted a novation, citing *Greenwood Leflore Hospital Commission v. Turner*, 213 Miss. 200, 206, 56 So. 2d 49, 497 (1952), in support of the proposition that a novation requires the addition of a new party. Secondly, Delta argued that the parties did not intend a novation, and the creditor did not assent to it, as required in *First American National Bank of Iuka v. Alcorn Inc.*, 361 So. 2d 481, 487 (Miss. 1978), *Mississippi Motor Finance Inc. v. Enis*, 254 Miss. 625, 628-29, 181 So. 2d 903, 904-05 (1966), and *Morgan v. Jackson-Mix Concrete*, 247 Miss. 863, 886, 157 So. 2d 772, 780 (1963). Delta also argued that while assent to a novation can be express or implied, here there was no express assent and no evidence of an implied assent. *See Amer. Blakeslee Mfg. Co. v. Martin*, 128 Miss. 302, 91 So. 6 (1922). Finally, Delta claimed that if a novation was intended upon execution of the 2008 notes, the collateral pledges and the lien against the Joneses would have been released.

¶11.    The chancellor entered a final judgment allowing Delta to amend its probated claim and attach the 2005 notes. She quoted from two cases – *First American National Bank*, 361

So. 2d at 487-88: "A novation involving substitution of debtors is a contract that discharges at once an existing obligation and creates a new contractual obligation by including as the new obligor a party who was not previously obligated"; and *Harris v. Tom Griffith Water Well & Conductor Service Inc.*, 26 So. 3d 338, 341 (¶¶10-11) (Miss. 2010):

> A novation may occur where the debt remains the same, but a new debtor is substituted. In such event, the original debtor is acquitted, his obligation is extinguished, and the creditor contents himself with the obligation of the second debtor. *Miss. Ins. Guar. Ass'n v. MS Cas. Ins. Co.*, 947 So. 2d 865, 871 (Miss. 2006) (quoting *Greenwood Leflore Hosp. Comm'n v. Turner*, 213 Miss. 200, 56 So. 2d 496, 497 (1952)). *See also First Am. Nat'l Bank of Iuka v. Alcorn, Inc.*, 361 So. 2d 481, 487 (Miss. 1978) (citing *Miss. Motor Fin., Inc. v. Enis*, 254 Miss. 625, 181 So. 2d 903 (1966)). The Restatement of Contracts defines novation as a contract that (a) discharges immediately a previous contractual duty or a duty to make compensation, and (b) creates a new contractual duty, and (c) includes as a party one who neither owed the previous duty nor was entitled to its performance. Restatement (First) of Contracts § 424 (1932). In other words, a novation involves a substituted contract.

(Internal quotation marks omitted).

## STANDARD OF REVIEW

¶12.    This case presents questions of fact and law. For questions of fact, "[w]e will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused [her] discretion, applied an erroneous legal standard, was manifestly wrong, or was clearly erroneous." *Harris*, 26 So. 3d at 340 (¶7). "Questions of law are reviewed de novo." *Id.*

## ANALYSIS

### I.      Effect of 2008 Notes on 2005 Notes

¶13.    In this case, the chancellor made no findings of fact and appears to have determined,

as a matter of law, that the 2008 notes could not constitute novations as no new debtor was substituted. Relying upon *Ainsworth v. Lee*, 218 Miss. 813, 67 So. 2d 905 (1953), we find this proposition to be an incorrect statement of Mississippi law.

¶14. The Mississippi Supreme Court, in *Ainsworth*, explained:

> There are three kinds of novation: (1) where the debtor and creditor remain the same, but a new debt takes the place of the old one; (2) where the debt remains the same but a new debtor is substituted; and (3) where the debt and debtor remain, but a new creditor is substituted. *Adams v. Power*, 48 Miss. 450.[6] In *Greenwood Leflore Hospital Comm. v. Turner*, 213 Miss. 200, 56 So. 2d 496, 497, this rule was deduced: "A novation may occur where the debt remains the same, but a new debtor is substituted. In such event, the original debtor is acquitted, his obligation is extinguished, and the creditor contents himself with the obligation of the second debtor." In 39 Am. Jur., p. 255, Sec. 2, is found this definition of notation: "A novation, then, as understood in modern law, is generally defined as a mutual agreement among all parties concerned for the discharge of a valid existing obligation by the substitution of a new valid obligation on the part of the debtor or another, or a like agreement for the discharge of a debtor to his creditor by a substitution of a new creditor."

*Id.* at 817-18, 67 So. 2d at 907.

¶15. In *Ainsworth*, the ultimate question was whether a mortgage lien of Burnham Ainsworth was superior, or subject to, the title of D.H. Lee in certain real property. A deed of trust conveying the property was executed by Willie Jones and G.G. Gregory to secure a debt owed to Ainsworth. *Id.* at 815, 67 So. 2d at 906. Jones and Gregory subsequently sold Lee a one-third interest in the lot and automobile business thereon. The deed provided that Lee would be liable for one-third of the indebtednesses of the business. Gregory then

---

[6] In *Adams v. Power*, 48 Miss. 450, 454 (1873), the supreme court discussed the "well settled principles of law" regarding novation, including its history in civil law with three types of novation, and its similarity to the common-law doctrine.

sold his one-third interest in the business to Jones and requested that Ainsworth satisfy the deed of trust, release Gregory, and take a new deed of trust from Jones. *Id.* at 816, 67 So. 2d at 906. Ainsworth satisfied and cancelled Jones and Gregory's original deed of trust, and Jones alone executed a new deed of trust to secure the balance of the original debt owed to Ainsworth. Jones never paid the debt; so the trustee foreclosed against Lee and Jones under the original deed of trust executed by Jones and Gregory, and later renewed by Jones. *Id.* at 817, 67 So. 2d at 906. Lee argued that the new debt-arrangement between Ainsworth and Jones was a novation of the old obligation, and the trial court dismissed the suit. *Id.* at 817, 67 So. 2d at 907. The supreme court affirmed, explaining that Ainsworth surrendered the old notes signed by Gregory and Jones, accepted the new notes and deed of trust signed by Jones alone, and satisfied the old deed of trust of record. Lee's one-third interest in the lot was superior to the mortgage lien of Ainsworth. Gregory was relieved of any personal responsibility for the debt. *Id.* at 818-19, 67 So. 2d at 907. While these facts do not mirror those before us exactly, they do verify that a novation does not require the addition of a new party. As in our case, the new notes were executed by fewer than all the original signatories.

¶16.    This area of the law has become confused, however, by two circumstances. First, there are cases which cite part of the doctrine of novation but which have been inferred by some, including Delta, to contain the entire doctrine. For example, Delta quotes *Greenwood LeFlore Hospital*: "A novation may occur where the debt remains the same, but a new debtor is substituted." *Greenwood Leflore Hosp.*, 213 Miss. at 206, 56 So. 2d at 497. Delta argues that this quote defines novation. However, *Greenwood Leflore Hospital* does not

9

state that this is the only way a novation "may occur," and in fact cites *Adams* for its authority.[7] The supreme court in *Ainsworth* quoted this exact statement immediately following its recognition of the "three kinds of novation." *See supra.* Obviously, then, substitution of parties is not the only type of novation recognized in Mississippi.[8]

¶17. Further confusion is caused by the Restatement of Contracts' utilization of the term "novation" only to refer to one type of subsequent or substituted contract. The Second Restatement defines novation as a "*substituted contract* that includes as a party one who was neither the obligor nor the obligee of the original duty." Restatement (Second) of Contracts § 280 (1981) (emphasis added). A "substituted contract," in turn, is one "that is itself accepted by the obligee in satisfaction of the original duty and thereby discharges it." *Id.* at § 279 cmt. While the First Restatement did not refer to a novation as a type of "substituted

_____

[7] As previously noted, *Adams* is the earliest case in Mississippi discussing the "three types of novation." *See supra*. *Greenwood Leflore Hospital* states:

> In *Adams v. Power*, 48 Miss. 450, it was recognized that a novation may occur where the debt remains the same, but a new debtor is substituted. In such event, the original debtor is acquitted, his obligation is extinguished, and the creditor contents himself with the obligation of the second debtor.

*Greenwood Leflore Hosp.*, 213 Miss. at 206, 56 So. 2d at 497.

[8] Similarly, in some cases the supreme court has stated: "A novation involving substitution of debtors is a contract that (a) discharges immediately an existing contractual obligation, (b) creates a new contractual obligation by, (c) including as the new obligor a party who was not previously obligated." *See Miss. Motor Fin. Inc. v. Enis*, 254 Miss. 625, 628, 181 So. 2d 903, 904 (1966) (citing *Greenwood Leflore Hosp.*, 213 Miss. at 200, 56 So. 2d at 496); 39 Am. Jur. *Novation* § 2 at 254-55 (1942); Restatement (First) of Contracts § 424 (1932)); *see also First Am. Nat'l Bank*, 361 So. 2d at 487-88 (citing *Enis*, 254 Miss. at 628, 181 So. 2d at 904 (1966)). Again, while these cases describe a novation "involving substitution of debtors," they do not say that this is the only type of novation recognized in Mississippi.

contract," its definition[9] is contained in the chapter entitled "Discharge of Contracts." The manners of discharge included not only novations, but also rescissions and accords, including "An Accord Itself as Satisfaction": "A subsequent contract may itself be accepted as immediate satisfaction and discharge of a pre-existing contractual duty, or duty to make compensation; and if so accepted the pre-existing duty is discharged and is not revived by the debtor's breach of the subsequent contract." Restatement (First) of Contracts § 418 (1932).[10]

¶18. The Maryland Court of Appeals' opinion *Leisner v. Finnerty* contains the most thorough discussion of the comparison between the Restatement and common-law definitions of novation we have been able to locate:

> Although the Restatement, Contracts, Section 424, would require that a new party be introduced into the existing agreement in order for a "novation" to occur, the decisions in this State and many other jurisdictions have made no such distinction or requirement[.] Although the position taken by the Restatement may be the more proper one from a puristic standpoint, we find that in Maryland and elsewhere the terms "novation," "merger," "accord" and "substituted contract" have at times been used interchangeably. We think this Court both recognized and answered this problem in semantics when Chief Judge Brune for the Court in *Hudson v. Md. State Housing Co.*, 207 Md. 320,

---

[9] The First Restatement of Contracts states:

A novation *within the meaning of the Restatement of this Subject* is a contract that (a) discharges immediately a previous contractual duty or a duty to make compensation, and (b) creates a new contractual duty, and (c) includes as a party one who neither owed the previous duty nor was entitled to its performance.

Restatement (First) of Contracts § 424 (1932) (emphasis added).

[10] Neither this type of accord or the "substituted contract" of the Second Restatement require the addition of a third party.

114 A.2d 421 (1955), with his usual perspicuity stated:

> In current legal terminology some authorities apply the term 'merger' or 'substituted contract' rather than 'novation' to the substitution of a new agreement for an old one between the same parties, and reserve the term 'novation' for a new agreement in which one or more new parties are introduced. Restatement, Contracts, Sections 424, 443; Williston, Contracts, Rev. Ed., Section 1865. The latter points out, however, that the term 'novation' is not uncommonly applied in the common law, as well as in the civil law, to a substituted contract between the same parties. In this State the term 'novation' has been applied to a new contract between the parties as well as to a new contract involving one or more new parties.

*Leisner v. Finnerty*, 250 A.2d 641, 643-44 (Md. 1969).

¶19. We find *Adams* and *Ainsworth* clearly follow civil and common-law definitions of "novation" rather than the Restatement view. However, in *Harris*, quoted by the trial court, *supra*, the supreme court cites *Greenwood Leflore Hospital*, the First Restatement of Contracts, and the "substituted contract" concepts from the Second Restatement.

¶20. The question is whether the *Harris* court intended to overrule *Ainsworth* or the "well settled principles of law" identified by *Adams* without comment or explanation. We think not.[11] At most, we believe *Harris* may signify a change from the common law to Restatement terminology. As noted previously, both the First and Second Restatements recognize subsequent or substituted contracts, which do not require additional parties; the Restatements just do not refer to them as "novations." Therefore, as *Ainsworth* is on point and not overruled by the Mississippi Supreme Court, we determine that the 2008 notes might

---

[11] Most recently, the United States District Court for the Southern District of Mississippi cited *Ainsworth*'s three types of novation under Mississippi law. *U.S. Bank Nat'l Assoc. v. State Bank & Trust Co.*, 45 F. Supp. 3d 582, 588 (S.D. Miss. 2014).

constitute novations without the addition of a new party.

¶21. The burden of proof rests on the party asserting a novation to establish it. *Morgan v. Jackson Ready-Mix Concrete*, 247 Miss. 863, 886, 157 So. 2d 772, 780 (1963) (citing 66 C.J.S. *Novation* § 26). Whether a novation was established depends "on whether the parties intended to extinguish the old obligation by substituting the new one," which is a question for the finder of fact. *Id.* (citing 61 A.L.R. 2d 755, 759 (1958); 66 C.J.S. *Novation* § 27).

¶22. In the instant case, the trial court did not make any findings of fact as to whether the parties intended to extinguish the 2005 notes by execution of the 2008 notes. A number of factors may be considered in determining intent. *See generally* Annotation, *Renewal Note as Discharging Original Obligation or Indebtedness*, 52 A.L.R. 1416 (1928) (collecting cases). Delta argues that had the parties intended to extinguish the 2005 notes, the deeds of trust executed by Jones and his wife would have been satisfied of record. This argument does have some support in law. In *Adams*, the supreme court stated: "An important rule of novation is, that the extinction of the debt destroys also all rights and liens appertaining thereto. Hence, if any hypothecations be attached to the old contract, they will be canceled by the new one, unless express words retain them." *Adams*, 48 Miss. at 456. In this case, however, the deeds of trust were executed in 2000, at a time when Jones does not appear to have any personal liability on the notes. Therefore, personal liability and the pledge of security do not go hand-in-hand. Further, Jones's deeds of trust secure future advances to Three Rivers. Accordingly, Jones's property stands as security for liabilities incurred by Three Rivers both before and after execution of the 2005 notes upon which Jones was

13

personally liable. This point is, therefore, not determinative of whether the parties intended a novation.

¶23. Delta further argues that there is no evidence indicating the parties intended a novation to occur. At the hearing, the Estate, however, introduced a general promissory note "checklist" – "Final Checklist for General Promissory Note" – identifying who was to sign the documents and actions to be taken to "make [the note] legal." The checklist stated: "The Promissory Note is co-signed by a third party. Therefore, Lee Pinkston must also sign the Note." Delta objected to the admission of this document because there had been no testimony as to who prepared it. The chancellor stated that the document had already been admitted, but she would "not determine who actually made that preparation unless you have adequate to testimony to present or evidence to present in that regard." The Estate argued that even if Jones created the checklist (which it argued he did not), it would still express the intention that Jones was not intended to sign the 2008 notes.

¶24. Here, the issue is not whether it was intended Jones would not execute the new notes, but whether the execution of those notes was intended to extinguish the 2005 obligation. We agree with the Estate that the checklist, regardless of who created it, could indicate an intent not to continue Jones's obligation. If Delta intended for the 2005 notes to continue, why would it need the personal guaranty of one but not the other 2005 guarantor? Given the limited record and arguably conflicting evidence, we cannot determine as a matter of law that there was no evidence of intent. Accordingly, we reverse and remand for the chancery court to determine whether the execution of the 2008 notes was intended to extinguish the

14

2005 notes.

## II.  Waiver

¶25.    The Estate argues that Delta waived all claims against Jones individually when Delta accepted the 2008 renewal notes without Jones's signature in an individual capacity.  In response, Delta mistakenly claims that the defense of waiver was not presented before the chancery court, and is thus waived on appeal.  However, the defense of waiver was brought up in the Estate's objection to the motion to amend the probated claims, the related memorandum of law, and the hearing on the motion.  We are not persuaded, however, by the Estate's argument that the execution of the 2008 renewal notes extinguished the 2005 notes, and Delta thereby waived its rights to any defenses or claims under the 2005 notes.

¶26.    As Delta points out, its probated claims were not asserting a defense of waiver on the notes, but rather a cause of action for payment by the Estate.  To support its argument, the Estate cites cases on the defense of waiver: *Gay v. First Nat'l Bank*, 172 Miss. 681, 160 So. 904 (1935) and *Austin Dev. Co. v. Bank of Meridian*, 569 So. 2d 1209 (Miss. 1990).  However, both cases are distinguishable.  *Gay* stands for the proposition that when a debtor executes a renewal note, the defenses of the original note are waived, and the debtor must pay the renewal note.  *Gay*, 172 Miss. at 686, 160 So. at 905.  In *Austin*, which cites *Gay*, a company renewed its loan with a bank several times because it could not pay its initial loan.  *Austin*, 569 So. 2d at 1210-11.  The bank subsequently sued on the debt, and was granted summary judgment.  *Id.* at 1211.  The Mississippi Supreme Court affirmed, holding that the debtor/company waived any defense or cause of action against the bank, which had

15

failed to timely call upon a letter of credit which was collateral for the debtor's loan, because the debtor/company executed renewal notes and paid interest on the notes. *Id.* at 1213.

¶27.    Here, Delta is not arguing that the Estate waived a defense regarding the notes; the Estate is arguing that Delta, by accepting the new notes, waived its right to pursue claims on the original notes. We believe that the issue is one of novation, as discussed in issue one, rather than of waiver.

### III.    Addition of 2005 Promissory Notes to Delta's Probated Claims

¶28.    The Estate argues that the chancellor erred in allowing Delta to "substitute"[12] the 2005 notes for the 2008 notes. Further, the Estate claims that the amendment was untimely as it was submitted over three years after the time allowed, thereby violating Mississippi Code Annotated sections 91-7-149 and 91-7-151 (Rev. 2013).

¶29.    Section 91-7-149 explains the procedure for probating claims and requires that written evidence of the probated claim against a decedent's estate be submitted to the clerk, including an affidavit stating:

> the claim is just, correct, and owing from the deceased; that it is not usurious; that neither the affiant nor any other person has received payment in whole or in part thereof, except such as is credited thereon, if any; and that security has not been received therefor except as stated, if any.

Section 91-7-151 explains the ninety-day time limit and amendment procedures for probated claims. Also, a claim may be amended after the ninety-day period has expired through

---

[12] On appeal, the Estate contends Delta was "substituting" the 2005 notes for the 2008 notes; however, in its motions to amend, Delta does not request "substitution" but the addition of the 2005 promissory notes to "simply perfect the claim as filed." The Estate's word choice in the first issue relates to the second issue it raises regarding novation, or substitution, of the probated claims.

approval of the court, as the Mississippi Supreme Court explained in *Central Optical Merchandising Co. v. Lowe*, 249 Miss. 61, 160 So. 2d 673 (1964):

> [A] seasonably filed claim against the estate of a decedent may be amended after the expiration of the time limited for the filing of claims *where it is necessary or desirable to accomplish complete justice between the parties*, the original statement shows a claim (or cause of action) which may be established as a valid one, upon which an amendment can be predicated, *the character and identity of the claim (or cause of action) is not changed*, unrelated increases in the sum claimed are not included, and the proposal is not contrary to the provisions of the probate statute, as construed, but rather in harmony with applicable curative or jeofails statutes permitting amendments to pleadings, etc., in proper civil cases.

*Id.* at 75-76, 160 So. 2d at 679-80 (emphasis added) (quoting H.D. Warren, Annotation, *Amendment of Claim Against Decedent's Estate After Expiration of Time for Filing Claims*, 56 A.L.R. 2d 627 § 2(a), at 628 (1957)).

¶30. The Estate argues that with Delta's amendment, the 2008 notes were substituted by the 2005 notes and thus materially changed the identity of the claims. The Estate contends the borrowers for the 2005 notes were Three Rivers, Jones, and Pinkston, while the borrower for the 2008 notes was only Three Rivers, with Pinkston as guarantor, because Jones did not sign the notes in an individual capacity. Because of these differences, the Estate claims the amendment, filed after the ninety-day probate deadline, was untimely and thus improper. We disagree.

¶31. Here, Delta received the Estate's notice to creditors on March 1, 2013. Delta filed two separate claims against the Estate for indebtedness on April 11, 2013, within the ninety-day deadline. Nearly two years later, on December 18, 2014, the Estate objected to the probated claims. Delta filed its motion to amend the claims in June 2015 and then its

17

amended motion to amend the claims on November 30, 2015. In both of the motions, Delta stated the probated claims were a result of indebtedness incurred by Three Rivers, Jones individually, and Pinkston individually. Delta maintained that the probated claims' identity did not materially change except for the addition of the 2005 notes, which was merely an "additional documentation of the claims."

¶32. In *Central Optical*, the Mississippi Supreme Court found that "substantial compliance is sufficient" in statutes relating to claims against decedents' estates. *Id.* at 71, 160 So. 2d at 677. "Where the amendment increases the amount of the claim, sets up a new cause of action, and materially changes the basis for the claim, it is not allowable" past the statutory time limits. *Id.* at 75, 160 So. 2d at 679 (citing 34 C.J.S. *Executors and Administrators* § 417). However, an amendment is allowable if it "does not amount to a new claim, but is merely an improvement or perfection of one presented in time but lacking certain elements necessary to express its full merits." *Id.*

¶33. Here, the trial court did not abuse its discretion in allowing the amendment. No additional funds were borrowed in 2008, and the due date was merely extended to allow more time to pay off the loans. While the interest rate was lower under the 2005 notes, we do not find, as a matter of law, that the change in interest rate materially altered the character or identity of the claim. Accordingly, the amendment was allowable outside of the statutory ninety-day time limitation under *Central Optical*.

¶34. As discussed in issue one, the chancery court must, however, determine on remand whether the 2005 notes were extinguished by novation.

18

¶35.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**